[Cite as *State v. Mitchell*, 2023-Ohio-4648.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                            No. 112461

    v. :

SONYA MITCHELL, :

    Defendant-Appellant. :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 21, 2023

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-22-666921-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Rachel E. Cohen, Assistant Prosecuting
Attorney, *for appellee*.

Cullen Sweeney, Cuyahoga County Public Defender, and
Noelle A. Powell, Assistant Public Defender, *for appellant*.

SEAN C. GALLAGHER, J.:

{¶ 1} Appellant Sonya Mitchell appeals the restitution order in this case.

Upon review, we affirm the decision of the trial court.

{¶ 2} On January 14, 2022, appellant was charged under a three-count indictment. On February 8, 2022, pursuant to a plea agreement, appellant entered a plea of guilty to Count 1, as amended to assault, a misdemeanor of the first degree in violation of R.C. 2903.12(A)(1), and to Count 3, as indicted for theft, a misdemeanor of the first degree in violation of R.C. 2913.02(A)(1). The remaining count was nolled.

{¶ 3} The charges arose from an incident that occurred on or about December 5, 2021, following the then recent death of appellant's partner. While appellant and others were at the deceased's apartment, there was an argument that led to an altercation, during which appellant caused a laceration to the victim's arm. The victim's injury was significant. It required nine stitches and resulted in permanent scarring on the victim's left upper forearm. Her medical bills were covered by CareSource. However, the victim considered several remedies for the scarring, and her preferred option was to get a tattoo to cover the scar. The victim was seeking $500 in restitution for the cost of the tattoo, which she planned to obtain.

{¶ 4} Because restitution was disputed, the trial court conducted an evidentiary hearing. The trial court was "persuaded by the evidence presented that restitution ought to be ordered[.]" The trial court ordered restitution in the amount of $500, over appellant's objection. Further, the trial court sentenced appellant on each count to a suspended six-month jail term, three years of community control, and a suspended $1,000 fine. Appellant timely appealed the order of restitution.

{¶ 5} Under her first assignment of error, appellant claims the trial court erred in ordering her to pay restitution because she contends the victim did not suffer an "economic loss" under the governing statute.[1] Under her second assignment of error, appellant argues there was a lack of evidence from which the court could discern the amount of restitution to a reasonable degree of certainty.

{¶ 6} "[T]o what extent court-ordered restitution as part of a criminal case may be used to make a victim whole is a matter determined by statute and the [Ohio] Constitution." *State v. Yerkey*, 171 Ohio St.3d 367, 2022-Ohio-4298, 218 N.E.3d 749, ¶ 18. Marsy's Law affords the victim of a crime the right "to full and timely restitution from the person who committed the criminal offense or delinquent act against the victim[.]" Article I, Section 10a(A)(7), Ohio Constitution. However, "[n]othing in Marsy's Law explicitly or implicitly changes what losses qualify for restitution in Ohio" and Ohio's restitution statutes are "still used to determine which losses qualify for restitution." *Yerkey* at ¶ 12, 15. In other words, the statutory meaning of restitution has not been altered or expanded by Marsy's Law. *Id.* at ¶ 19.

{¶ 7} "Consequently, 'restitution' continues to mean compensation for economic losses or economic detriment suffered by the victim 'as a direct and proximate result of the commission of the offense,' *see* R.C. 2929.18(A)(1); R.C. 2929.28(A)(1); R.C. 2929.01(L)." *Yerkey* at ¶ 15; *see also State v. Brasher*, 171

---

[1] Although appellant refers to R.C. 2929.18(A)(1) in her brief, that statute applies to restitution for a felony. R.C. 2929.28(A)(1) governs restitution for a misdemeanor and is applicable herein. Under either provision, restitution is defined the same.

Ohio St.3d 534, 2022-Ohio-4703, 218 N.E.3d 899, ¶ 15. "Generally speaking, a consequence is a direct and proximate result of an act when the consequence is foreseeable and is produced by the natural and continuous sequence of events following the act." *Yerkey* at ¶ 16, citing *Strother v. Hutchinson*, 67 Ohio St.2d 282, 286-287, 423 N.E.2d 467 (1981). As observed in *Yerkey*, "[c]rime victims should receive restitution from those whose crimes have directly and proximately caused them to suffer economic loss or detriment." *Id.* at ¶ 19. However, losses that cannot be said to "flow as a natural and continuous consequence from the *commission* of the offense" are generally not compensable as restitution in a criminal case. (Emphasis sic.) *See id.* at ¶ 17.[2]

{¶ 8} R.C. 2929.28(A)(1) provides a statutory mechanism for ordering restitution in misdemeanor cases. If the amount of restitution is disputed, the court is required to hold an evidentiary hearing. R.C. 2929.28(A)(1). Under the version of R.C. 2929.28(A)(1) applicable to this case, the victim was required to "prove by a preponderance of the evidence the amount of restitution sought from the offender." Former R.C. 2929.28(A)(1), effective October 2, 2020. As provided thereunder, "the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information[.]" *Id.* However, the ordered amount of restitution is limited to "the amount of the

---

[2] In *Yerkey*, the Supreme Court of Ohio acknowledged that there is a "need for [crime] victims to be made whole," but recognized that crime victims "have other avenues for recovery beyond restitution" and have access to the civil justice system. *Id.* at ¶ 18-19.

economic loss suffered by the victim as a direct and proximate result of the commission of the offense." *Id.*

{¶ 9} As this court has previously stated, "'the amount of economic loss suffered by the victim, and its causal connection to the defendant's conduct in committing the offense, may generally be established by the victim's testimony or other information contained in the trial or sentencing record * * *.'" *State v. Klimczyk*, 8th Dist. Cuyahoga No. 112376, 2023-Ohio-3793, ¶ 16, quoting *State v. Griffin*, 6th Dist. Lucas No. L-11-1283, 2013-Ohio-411, ¶ 44. The amount of the restitution must be supported by competent, credible evidence in the record and discernable to a reasonable degree of certainty. *Cleveland v. Figueroa*, 8th Dist. Cuyahoga No. 111267, 2022-Ohio-4012, ¶ 9, citing *State v. Johnson*, 2018-Ohio-3670, 119 N.E.3d 914, ¶ 55 (8th Dist.) "Generally, appellate courts review trial courts' restitution orders for abuse of discretion." *Klimczyk* at ¶ 11, citing *State v. Norman*, 8th Dist. Cuyahoga No. 104936, 2017-Ohio-752, ¶ 18; *see also Figueroa* at ¶ 8, citing *Strongsville v. Kane*, 8th Dist. Cuyahoga No. 97765, 2012-Ohio-3372, ¶ 8.

{¶ 10} In this case, the record before us shows the victim sustained a significant injury to her forearm during the assault offense, and she sought $500 in restitution to remedy the scarring to her forearm. The victim testified that during her medical follow-up, ways to remedy the scar were discussed with the doctor. She did not wish to have a skin graft performed because the doctor explained to her that there was no guarantee it would look right and that it could cause scarring on

another part of her body from where the graft was taken. Another option was to get a tattoo to cover the scar, which was the victim's preferred option. The victim obtained an estimate from an independent tattoo artist in the amount of $500. The victim provided a copy of the estimate, which was from a screenshot from the victim's phone of a price list the tattoo artist sent to the victim. The victim did not know how long the tattoo would specifically take, but she indicated that she "couldn't see it going past two hours" and that the tattoo artist informed her "three hours, [$]500." Although the victim had not yet scheduled an appointment for the tattoo because she wanted the scar to be visible at court, the victim testified that she planned to get the tattoo as soon as possible.

{¶ 11} The trial court recognized that "[t]he unrebutted testimony of the victim is that she wishes to get a tattoo to cover the scar that resulted from defendant's crime." Although the trial court recognized the uniqueness of the request and inartfully commented that this was not strictly an economic loss, the trial court determined that the restitution sought for the tattoo was "not unreasonable" under the circumstances given the record before it. The trial court also stated that "it is reasonable for the victim not to get the tattoo before the proceedings so that had [the case] gone to trial, [the scar] would have been noted" and so that the jury would be able to see the injury she suffered. The trial court further determined that the restitution sought "is reasonable under the circumstances and ought to be paid [by] the defendant." The trial court stated in part:

> I note that Ohio law strongly favors making individuals of crime whole, and * * * a victim of crime is free, within reasonable limits to explain what steps need to be taken to * * * compensate her for injury caused and to permit her to take steps to * * * restore her body, in this case, to a condition as close as possible to the ideal * * *, given the limits of modern medicine to what has happened[,] before she was injured in the crime at issue in the case.

The trial court proceeded to impose restitution in the amount of $500.

{¶ 12} Our review reflects that the trial court ordered restitution for an economic loss or detriment suffered by the victim as a direct and proximate result of the commission of the assault offense. We are not persuaded by appellant's argument to the contrary. Simply because the victim is electing a tattoo over the recommended skin-graft procedure does not require a different result. It is evident from the record that appellant caused the victim to suffer an economic loss or detriment, which was a foreseeable consequence of the assault offense.

{¶ 13} Additionally, the record reflects the restitution order was supported by competent, credible evidence in the record, and that the amount of restitution was determined to a reasonable degree of certainty. The victim was seeking $500 to remedy the scar on her forearm, to effectively make the victim whole again. We find no merit to appellant's challenge to the evidence that was provided regarding the tattoo estimate. As this court has previously recognized, "the estimate is a permissible source for the trial court to base its order of restitution." *See Figueroa* at ¶ 15. Moreover, the victim provided testimony concerning the estimate amount, and "the Rules of Evidence do not apply in sentencing proceedings." *See id.* at ¶ 11, citing *State v. Cook*, 83 Ohio St.3d 404, 425, 700 N.E.2d 570 (1998). The victim

proved by a preponderance of the evidence that she was entitled to $500 in restitution. We are not persuaded by any other argument raised by appellant. There was no abuse of discretion by the trial court.

{¶ 14} Upon our review, we find no error in the trial court's judgment. The assignments of error are overruled.

{¶ 15} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

EILEEN A. GALLAGHER, P.J., and
MARY J. BOYLE, J., CONCUR